**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

SILVIA V. MALDONADO,

      Plaintiff,

v.                                        No. 1:25-cv-181 KG/KRS

BNSF RAILWAY COMPANY,
a Delaware corporation,

      Defendant.

**ORDER DENYING DEFENDANT'S MOTION TO COMPEL PLAINTIFF TO**
**EXECUTE PERSONNEL RELEASE (Doc. 61)**

Plaintiff Silvia Maldonado has sued her employer, BNSF Railway Company, to recover for injuries Plaintiff suffered when a switch she was attempting to operate in BNSF's railyard malfunctioned. Currently before the Court is BNSF's Motion to Compel Plaintiff To Execute Personnel Release ("Motion") (Doc. 61), filed January 30, 2026. Plaintiff filed a response to the Motion on February 13, 2026, and BNSF filed a reply on February 27, 2026. (Docs. 66, 67). Having considered the parties' briefing, the record of the case, and relevant law, the Court denies the Motion.

**I.**      **Background**

BNSF's Request for Production No. 10 states as follows:

> Please execute the releases attached hereto, including the information requested and highlighted to complete the Request for Social Security Earnings Information.

(Doc. 61-1 at 2). Plaintiff served her responses to BNSF's Requests for Production on July 25, 2025 (Doc. 67-1 at 3), and responded to Request for Production No. 10 by stating: "*See copies of requested authorizations signed by Plaintiff, furnished.*" (Doc. 61-1 at 2). Plaintiff did not initially include the signed authorization forms with her written response, but did send them on July 31,

2025, after BNSF's counsel emailed Plaintiff's counsel asking about them. *See* (Doc. 67-1 at 2-3). Plaintiff conveyed 16 pages of signed releases to BNSF's counsel, mostly relating to Plaintiff's medical history. (Doc. 66 at 2). But Plaintiff did not sign and return the personnel release. (Doc. 61 at 2). On July 31, 2025, BNSF's counsel followed up by email asking about the personnel release specifically, and sent another email asking about it on August 6, 2025, at which time Plaintiff responded "*I'm unclear on the personnel authorizations. I don't think that's discoverable given the circumstances and remote nature of them.*" (Doc. 67-1 at 1). BNSF then sent a formal discovery letter on August 14, 2025, which pointed out that Plaintiff had not objected to providing the personnel release. (Doc. 61-2 at 2). Plaintiff responded by serving BNSF with a supplemental response, in which she objected "*[t]o the extent Defendant seeks authorizations for personnel or employment records from Plaintiff's prior employers,*" stating that "*[s]uch requests are irrelevant to the claims and defenses in this action, not proportional to the needs of the case, and unduly burdensome under Fed. R. Civ. P. 26(b)(1). They may also be protected under the collateral source doctrine. As such, Plaintiff will not provide authorizations for prior employment records.*" (Doc. 61-3 at 2). Plaintiff further stated that she "*would consider providing authorizations for specifically identified employers if Defendant demonstrates that the records are relevant to the claims, defenses, or damages at issue, and subject to any appropriate limitations.*" (*Id.*).

There is no indication of any further communication between counsel on the subject until October 23, 2025, when BNSF's counsel responded to Plaintiff's counsel's August 6, 2025 email stating: "*Plaintiff did not object to providing education and work releases and her education and work history are clearly relevant, particularly in light of your expert's opinions. Please provide ASAP or advise if Plaintiff continues to refuse so we can file a motion to compel.*" (Doc. 67-1 at 1). Plaintiff represents that, in November 2025, her counsel had a telephone conference with

BNSF's counsel during which the scope of the requested personnel release was discussed, and that her counsel "offered to collect the records and produce what, if any, would be responsive to BNSF's document requests." (Doc. 66 at 3). BNSF's counsel declined that offer, and then waited until January 30, 2026 to filed the present Motion.

## II.     Discussion

The personnel release, if signed by Plaintiff, would authorize the "*Personnel Departments of any former or present employer of [Plaintiff],*" to release to BNSF *"copies of all of the information contained in [Plaintiff's] personnel/employee/medical/discipline file dated on or subsequent to August 4, 2017.*" (Doc. 61-1 at 3). BNSF asks to modify the release to extend the beginning date from 2017 back to 2012, stating in its Motion that a longer time period is required "[i]n light of Plaintiff's expert opinions, and because she started employment with BNSF in 2018." (Doc. 61 at 4 n.1).

There is a split of authority across the country as to whether a court can compel a party to execute a HIPAA authorization/medical release form. *See Romfo v. Scottsdale Ins. Co.*, No. 5:17-CV-422-D, 2019 WL 1210105, at \*4 (E.D.N.C. Mar. 13, 2019); *see also Coleman v. Cedar Hill Indep. Sch. Dist.*, No. 3:21-CV-2080-D, 2022 WL 1470957, at \*2 (N.D. Tex. May 10, 2022) ("Although the Fifth Circuit has held that a party is not required to sign an authorization to release medical records appended to Rule 33 interrogatories, … district court decisions in this circuit have split as to the question whether a party may be required to sign an authorization for the release of medical, employment, or other records pursuant to Rule 34."). Many courts recognize "that obtaining a party's written consent for the release of medical records represents the least expensive and most efficient means of procuring information from medical or counseling providers." *Sherlock v. Fontainebleau*, 229 F. Supp. 3d 1277, 1281 (S.D. Fla. 2017) (internal quotation marks

and citations omitted). But other courts conclude "that authorization for the release of medical records should not be routinely compelled, even when it may be the most efficient manner for such discovery." *Morris v. City of Colorado Springs*, No. 09-CV-01506-PAB-MEH, 2009 WL 4927618, at *2 (D. Colo. Dec. 18, 2009).[1]

This Court's Local Rules require a party to execute medical releases in any case "in which the physical or mental medical condition of a party is an issue," for any healthcare provider to have treated the party within the last five years preceding the date of the occurrence at issue. *See* D.N.M. LR-CIV. 26.3(d)(3). This requirement, however, is limited to medical releases, and neither party has cited controlling authority from the Tenth Circuit on whether a party can be compelled to execute releases to obtain personnel records through a Rule 34 request for production of documents. Given that the law is uncertain in this area, and that BNSF has not cited any legal authority to support its argument that Rule 34 authorizes a demand by a party seeking discovery that the producing party execute a personnel records release form, the Court is not inclined to grant the Motion. *See United States v. Davis,* 622 Fed. Appx. 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself."); D.N.M. LR-CIV. 7.3(a) (stating that a motion "must cite authority in support of the legal positions advanced").

If requesting execution of a personnel records release is outside the scope of Rule 34, it is irrelevant that Plaintiff may not have objected to Request for Production No. 10. Therefore, the Court need not address BNSF's waiver argument. However, to the extent that waiver is an issue,

---

[1] *Compare Meyer v. DG Retail LLC,* No. 13-2115-KHV, 2013 WL 5719508, at *5 (D. Kan. Oct. 21, 2013) ("[S]urely the most efficient way for both parties to proceed here would be for plaintiff to execute a reasonably tailored authorization form. But technically, … [t]he appropriate procedure to compel a non-party to produce documents is to serve a subpoena as set forth in Rule 45.").

the Court thinks Plaintiff has adequately explained his initial failure to object as being the result of inadvertence and lack of clarity regarding the reason Plaintiff was being asked to execute the personnel release form.[2] Plaintiff served BNSF with a supplemental response asserting her objection when the missing personnel release was called to her attention by BNSF following receipt of Plaintiff's initial response.

In addition, whereas Rule 33 (governing interrogatories) contains an express waiver rule, *see* FED. R. CIV. P. 33(b)(4) ("Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."), Rule 34, which governs requests for production of documents, does not. And although courts generally apply similar standards to objections under Rule 33 and Rule 34, courts have also held that whether objections are waived under Rule 34 "remains in the court's discretion." *Bonner v. Triple-S Mgmt. Corp.*, 68 F.4th 677, 684 (1st Cir. 2023) (holding that district court did not abuse its discretion in finding that the defendant did not waive its objections based on untimeliness when it "noticed its responses and objections within 10 days of the deadline to respond and [the plaintiff] did not show prejudice from the delay"); *see also Rogers v. Orleans Par. Sheriff Off.*, No. CV 22-5303, 2025 WL 3760764, at *4 (E.D. La. Dec. 30, 2025) (stating that "the court retains discretion to decline to compel production of requested documents when the request far exceeds the bounds of fair discovery, even if a timely objection has not been made" (internal quotation marks and citation omitted)).[3] "Indeed, a party's failure to

---

[2] *See* (Doc. 61-3 at 2 ("The original request is vague and ambiguous in that it refers only to 'the information requested and highlighted,' without clear specification beyond the attached Request for Social Security Earnings Information. Plaintiff complied with this request by providing a signed authorization for Social Security Earnings Information," while "signed medical authorizations were furnished to Defendant on or around May 8, 2025, in accordance with D.N.M. LR-CIV. 26.3(d)"); Doc. 67-1 at 1 (email from Plaintiff's counsel on August 6, 2025 stating that he was "unclear on the personnel authorizations")).

[3] BNSF argues that, "[i]f Plaintiff did not timely assert objections, they are waived—*end of analysis*." (Doc. 67 at 3 (emphasis added)). But even the cases cited by BNSF show that a failure to object does not necessarily "end" the analysis, for they all acknowledge (either explicitly or implicitly) that a waiver may be excused if the court finds good

timely object to the scope of discovery is not the sole deciding factor in a motion to compel discovery, as Rule 26(b)(2)(C) permits the court to *sua sponte* limit discovery that exceeds the permissible scope set forth in Rule 26(b)(1)." *Rogers*, 2025 WL 3760764, at *4 & n.27 (citing cases).

Plaintiff served her objections to the personnel records release approximately one month after her written discovery responses were served, and eleven days after BNSF sent Plaintiff a written discovery letter pointing out the absence of the personnel records release as a deficiency in Plaintiff's discovery responses. BNSF does not argue that Plaintiff's counsel's initial failure to object was in bad faith, or that it has been prejudiced by that initial failure to object. Nor is there any basis on the current record for finding either of those things. For these reasons, as well as the extremely broad nature of BNSF's discovery request (as discussed below), the Court finds that Plaintiff has shown good cause to disregard her failure to object initially and to consider her objection in ruling on BNSF's motion for an order compelling her to execute the personnel release.

Finally, the Court agrees with Plaintiff that the scope of the personnel records release form is unnecessarily broad, encompassing "copies of all of the information" contained in Plaintiff's personnel files dated on or subsequent to August 4, 2017, which, by its Motion, BNSF seeks to expand further to include from 2012 to present. As the Tenth Circuit has recognized, "personnel files often contain sensitive personal information . . . and it is not unreasonable to be cautious about ordering their entire contents disclosed willy-nilly." *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641,

---

cause to do so. *See, e.g., Christians in Workplace Networking Grp. v. Nat'l Tech. & Eng'g Sols. of Sandia, LLC,* No. 1:22-CV-0267 DHU/DLM, 2023 WL 4865549, at *2 (D.N.M. July 31, 2023); *City of Las Cruces v. United States,* No. CV 17-809 JCH/GBW, 2021 WL 5207098, at *10 (D.N.M. Nov. 9, 2021), *objections overruled,* No. CV 17-809 JCH/GBW, 2022 WL 704123 (D.N.M. Mar. 9, 2022)*; Brunson v. McCorkle,* No. 11CV1018 JCH/LAM, 2013 WL 12333491, at *1 (D.N.M. Jan. 4, 2013); *Lucero v Valdez,* 240 F.R.D. 591, 593 (D.N.M. 2007).

648-49 (10th Cir. 2008). "The privacy concerns implicated by a personnel file are distinct from those presented by a custodial file, because they are far more likely to contain personal, sensitive material." *Dufrene v. Am. Tugs, Inc.*, No. 18-554, 2018 WL 6448838, at *9 (E.D. La. Dec. 10, 2018). Courts have noted, for instance, that "alimony and child support garnishment, tax records and drug results" may be found in a personnel file. *Williams v. Roy O. Martin Lumber Co. L.L.C.*, 51 Fed. Appx. 483, 2002 WL 31319337, at *6 (5th Cir. 2002); *see also Rogers*, 2025 WL 3760764, at *11 (pointing out that personnel files "may contain tax records, drug results, and other such personnel, sensitive material"). BNSF has not demonstrated how that type of information would have any bearing on the issues in this case. Accordingly, BNSF's request for Plaintiff to execute a blanket personnel release, which could be used to obtain records from any number of unidentified employers over a fourteen-year period, is clearly overbroad.

Despite the "strong public policy against disclosure" of personnel records, such materials may be discoverable when they are "clearly relevant" and "not otherwise readily obtainable." *Scripps Health v. Nautilus Ins. Co.*, No. 21-CV-1634-AJB(WVG), 2022 WL 18781350, at *3 (S.D. Cal. Dec. 23, 2022) (quotations omitted); *see also Rogers*, 2025 WL 360764, at * 6 (employment record authorizations justified "where the requesting party has established the relevance of such records to a claim or defense in the case, and the scope of the records sought is proportional to the needs of the case"). Rarely, however, will an employee's entire file be discoverable. *See Scripps Health*, 2022 WL 18781350, at *3 (finding request for personnel records was appropriate when the "documents sought [were] specific and narrowly tailored," and the request "[did] not ask for an employee's entire file"). "The party seeking to compel discovery has the initial burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)." *Mi Familia Vota v. Hobbs*, 343 F.R.D. 71, 81 (D. Ariz. 2022) (quotation omitted). For the most part, BNSF's

7

relevancy arguments are conclusory and amount to little more than saying the records are relevant because they are relevant.[4]

BNSF is a bit more specific when it argues that Plaintiff's "injury history" during her previous employments is relevant because her current "alleged injuries are not consistent with alleged accident." (Doc. 61 at 5). This argument does not justify access to *the entirety of* Plaintiff's personnel files for the past fourteen years, however. Furthermore, impeaching Plaintiff regarding her current injuries may not be an adequate reason to allow BNSF access to Plaintiff's prior employment files, given Plaintiff's privacy interest in those files. For instance, in *Hardnett v. Louisiana Health Serv. & Indem. Co.*, No. CV 20-132-SDD-RLB, 2021 WL 278299 (M.D. La. Jan. 27, 2021), the defendant argued that it should be allowed to review the plaintiff's employment records "for information related to her credibility regarding what information [she] may have provided to her current employer regarding the reasons for leaving (or for her termination from) her employment" with the defendant. *Id.* at *3. The court found "no basis for allowing" the defendant to obtain the plaintiff's entire employment file, "including personnel records, performance reviews, and disciplinary records," stating that the defendant had asserted a "broad and speculative" justification for the entire file, and concluding that the plaintiff's "privacy interest in this information outweighs any likely benefit to [the] [d]efendant for the purposes of impeaching her credibility." *Id.* (citing *Hansen v. Alamo Mobile X- Ray & EKG Servs., Inc.*, No. 14-1070, 2015

---

[4] *See, e.g.,* (Doc. 61 at 1 (personnel records are "relevant to Plaintiff's claims and damages, in addition to Defendant's defenses"); *id.* at 2 ("The personnel release is necessary to obtain relevant information regarding Plaintiff's claims, alleged injuries, and damages, and the information sought is reasonably calculated to lead to the discovery of admissible evidence in light of Plaintiff's experts' opinions that reference and rely on such information."); *id.* at 3 ("Plaintiff's own theory of this case and the reports of her experts have placed the information contained in her employment records directly at issue."); *id.* at 4 ("A signed release is necessary to obtain pertinent employment records regarding Plaintiff's current claims, damages, and injuries. As this information and documentation relates also to Defendant's defenses, the request is relevant to this lawsuit, and the request seeks information within the scope of discovery.").

WL 12866215, at *3 (W.D. Tex. Oct. 7, 2015) ("[E]fforts to use third- party subpoenas to obtain a personnel filed and other documents in the hope of impeaching the plaintiff's credibility amounts to nothing more than a fishing expedition." (internal quotation and citation omitted)).[5]

BNSF also argues that the testimony of Plaintiff's vocational expert has "placed Plaintiff's employment history and records at issue." (Doc. 61 at 5). Specifically, the vocational expert has opined that Plaintiff "has suffered a total loss of earning capacity" since August 4, 2022 and is "completely disabled from work"; that she "would have a difficult time obtaining work within her qualifications"; that her job as conductor "would not impart any transferable skills … in other areas of employment"; that Plaintiff "would be limited to occupations that involve communication as the essential job function"; that "vocational training is not an option" for Plaintiff; and that Plaintiff "would not be a great candidate to return to school." (*Id*. at 5-6). According to BNSF, "[s]uch statements require investigation into Plaintiff's work history, the jobs she has previously conducted, and her job skills." (*Id.* at 6). But again, this argument might justify obtaining discrete parts of Plaintiff's personnel records—i.e., portions of those records that relate to Plaintiff's work history, the types of jobs she performed, and the types of job skills those jobs require. But it does not justify obtaining the entirety of Plaintiff's personnel records from the past fourteen years. BNSF has articulated no reason why "all of the information" in Plaintiff's personnel files from all previous jobs for the past fourteen years is discoverable.[6]

---

[5] *See also Reynolds v. York*, No. 3-04-MC-045-P, 2004 WL 1490040, at *1 (N.D. Tex. July 2, 2004) (rejecting the plaintiff's argument for obtaining discovery of "records from [the defendant's] former employer" in order to "impeach [the defendant's] credibility, establish a pattern and practice of defrauding customers, and discover whether he suffers from a medical condition that affects his ability to travel and testify in this case," and stating that "this broad discovery amounts to nothing more than a fishing expedition," which, even if reasonably calculated to lead to the discovery of admissible evidence, was outweighed by the defendant's privacy interests).

[6] *See, e.g., Coleman,* 2022 WL 1470957, at *4 (finding proposed employment release disproportionate to needs of case due to lack of time limitation and because it would allow the defendant to obtain employment records from any of the plaintiff's previous employers); *Zamora v. GC Servs., LP*, No. EP-15-CV-00048-DCG, 2017 WL 1861843, at

Even if "the Court may compel parties to sign written authorizations consenting to the production of various documents, the Court is not *required* to do so. Indeed, some courts are loathe to do so." *Peterson v. Nw. Mut. Ins. Co.,* No. 4:13-CV-00018-RAW, 2013 WL 11872711, at *2 (S.D. Iowa Aug. 19, 2013) (emphasis added). As Plaintiff points out, she has already executed authorizations for BNSF to discover her medical history. And to the extent that Plaintiff's past personnel files contain "injury history" at her previous employers, Plaintiff's counsel has offered to produce that information. (Doc. 66 at 9-10). Plaintiff also does not dispute that her work history and job skills are relevant issues, but argues that she "has already made numerous discovery responses on those issues, and, again, has "offered to produce discoverable information to the extent it is present in the personnel files covered by the Release." (*Id.* at 10). The Court finds this to be a better approach to obtaining relevant information in Plaintiff's personnel files than allowing BNSF unfettered access to those files.[7] The personnel release is not carefully tailored to seek

---

*5 (W.D. Tex. Feb. 17, 2017) ("The Court finds that Defendant's requests for Plaintiff's "entire personnel files" are overly broad on their face, and therefore will grant Plaintiff's motions as to these requests to both the prior and subsequent employers."); *Peña v. Burger King Corp.*, 12-248, 2012 WL 12547064, at *2 (E.D. Va. Sept. 21, 2012) (where subpoenas sought "the complete employment file of [Plaintiff] including employment application, payroll records, medical records, evaluations, correspondence and all other records omitting nothing," from the employers who employed the plaintiff eight to thirteen years ago, court finds that they "are overbroad, and could be quashed on th[at] basis alone without addressing relevance"); *E.E.O.C. v. Renaissance III Org.,* No. 3-05-CV-1063-B, 2006 WL 832504, at *1 (N.D. Tex. Mar. 30, 2006) (where the defendant argued that employment records "will likely contain information which will or could affect the value of these employees' claim," court holds "[s]uch a conclusory assertion, unsupported by any facts, evidence, or citations to legal authority, amounts to nothing more than a fishing expedition and does not justify the wholesale production of confidential employment records," and that "[e]ven if the discovery sought by defendant is reasonably calculated to lead to the discovery of admissible evidence, … the privacy interests of the charging parties far outweigh any likely benefit to defendant in obtaining the records its seeks").

[7] *See, e.g. Romfo*, 2019 WL 1210105, at *4 ("The court finds that an appropriate course in this case is to require the plaintiff to obtain the producible Social Security and Medicare records sought by defendant and then produce them to defendant. This approach enables plaintiff to exclude from production records or portions of records that contain information beyond the scope of production[.]"); *Prado*, 331 F.R.D. at 139 (where the plaintiff "offered to review her employment file and produce those portions (if any) related to the [issue on which the defendant claimed relevant information might be found] in lieu of her entire employment file," court states that the defendant "has no basis for demanding more" given "the likely overbreadth of the plaintiff's full employment file, its limited relevance, and the plaintiff's reasonable privacy interests therein"); *Hererra v. Easygate, LLC,* No. 11-2558, 2012 WL 5289663, at *3 (D. Kan. Oct. 23, 2012) (finding that the defendants had "adequately explained their purpose in obtaining" certain documents from the plaintiff's employer, but that "[s]uch documents … are discoverable through a lesser intrusive

10

relevant information while protecting Plaintiff's privacy interest in her employment files. Therefore, the release is not proportional to the needs of this case, and the Court will adopt Plaintiff's suggestion of requiring BNSF to narrow its request to specific documents that might be found in Plaintiff's personnel files for which BNSF has made a specific showing of relevance, and to then permit Plaintiff to obtain her personnel files herself and produce documents responsive to BNSF's narrowed discovery request.[8]

The Court realizes that, superficially at least, its decision on the current Motion may seem somewhat at odds with its ruling on Plaintiff's motion to quash the third-party subpoena issued by BNSF to obtain a workers' compensation claims file from the claims administrator, Sedgwick Claims Management, which relates to a previous injury suffered by Plaintiff. But that motion involved a discrete set of documents all relating to a single injury, and that injury was found relevant to BNSF's defenses in this case. The current Motion seeks a broad category of documents—literally anything found in personnel files kept by unidentified employers who previously employed Plaintiff over the past fourteen years—which obviously encompasses both relevant and irrelevant information, with Plaintiff having a privacy interest in much of the irrelevant information that will be produced. To the extent that BNSF can make an argument for

---

means than" obtaining them directly from the plaintiff's current employer, "i.e., they may be obtained directly from [the] [p]laintiff").

[8] BNSF argues that "Plaintiff is not the gatekeeper of evidence and allowing a plaintiff's attorney to determine what he deems to be relevant is not the standard." (Doc. 67 at 11). But as Plaintiff points out, that is actually how discovery typically works: the party seeking discovery explains what information it is looking for, and the producing party decides what documents in its possession or control are responsive. To allow BNSF to receive all of Plaintiff's employment files in order to search for relevant information itself is to allow a fishing expedition. *See Webber v. Mark One Elec. Co*., No. 09-0607, 2010 WL 2134323, at *1 (W.D. Mo. May 26, 2010) (finding that the defendant "failed to explain how the broad scope of information sought in the subpoena is relevant to its defense or plaintiff's cause of action," and concluding that the "defendant's subpoena appears to be a fishing expedition into plaintiff's work and personal history").

the relevance of certain, specified information, the Court believes requiring Plaintiff to sign blank authorization forms to gain unfettered access to her educational, employment, financial, and medical information, among other things, is oppressive and not the appropriate route to obtain that information.

BNSF asserts that Plaintiff concedes that all documents sought by the personnel release are relevant and should be produced when she stated that her counsel "has offered to produce all responsive documents covered by the Release." (Doc. 67 at 8 (quoting Doc. 61 at 7)). Based on the entirety of Plaintiff's response, however, the Court understood counsel as intending to say that he has offered to produce all documents found in Plaintiff's personnel files that are responsive to *BNSF's relevancy arguments*. Plaintiff has offered to produce *those* documents, not her entire personnel files. Any argument BNSF might make that "that there may be additional [relevant] information" that Plaintiff fails to produce, "is unconvincing. The Court will not allow issuance of the subpoenas based on the speculation that there 'may' be [additional relevant] documents,'" because that sort of argument is nothing more than a fishing expedition. *Sartin v. Exxon Mobil Corp.*, No. CV 22-603-JWD-RLB, 2023 WL 4836662, at *9 (M.D. La. July 27, 2023).

**ACCORDINGLY**, Defendant's Motion to Compel Plaintiff To Execute Personnel Release (**Doc. 61**) is **DENIED**. Because the Motion is denied, the Court also denies the request in the Motion for fees and costs.

IT IS SO ORDERED this 8th day of April, 2026.

KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE

12